**122** Cincinnati Gas & Electric Co. *v.* New York Trust Co.

First Department, January, 1926. [Vol. 215

---

The Cincinnati Gas and Electric Company, Plaintiff, *v.* The New York Trust Company, Defendant.

First Department, January 15, 1926.

Corporations — bonds — underlying bonds were issued against first mortgage — $3,000,000 of said bonds were pledged to secure notes — prior lien mortgage subsequently executed provides that on refund of notes said bonds shall be delivered to mortgagor — supplement to prior lien mortgage provides that said $3,000,000 underlying bonds on refunding of notes shall be delivered to trustee as additional security for prior lien bonds — in determining sinking fund payments there was to be subtracted from total bonds issued and outstanding, amount equal to underlying bonds issued and refunded under prior lien mortgage — said bonds for $3,000,000 were not refunded and should not be subtracted from prior lien bonds in fixing sinking fund payment.

In determining the amount to be paid into a sinking fund for the purpose of the redemption of prior lien bonds of a corporation secured by a trust mortgage which provided that there should be subtracted from the face of the total amount of bonds issued and outstanding thereunder an amount equal to the face amount of underlying bonds issued under a prior trust mortgage and refunded, $3,000,000 of the underlying bonds issued under the prior mortgage should not be subtracted, and the corporation should pay the percentage required for the sinking fund on that amount, since it appears that the prior lien mortgage as originally executed provided for the setting aside of enough bonds to refund the entire issue of the underlying bonds; that $3,000,000 of the underlying bonds had been issued prior to the execution of the prior lien mortgage as security for corporation notes and under the terms of the original prior lien mortgage those bonds, when the notes had been refunded, were to be returned to the trustee for the benefit of the mortgagor; that said notes were refunded by the issuance of bonds under the prior lien mortgage; but that under a supplement to the prior lien mortgage it was provided that the $3,000,000 of underlying bonds should, when the notes were refunded, be delivered to the trustee as additional security for the prior lien bonds, and at the same time the $3,000,000 of underlying bonds were withdrawn from the refunding class.

Under the terms of the mortgage the $3,000,000 of underlying bonds were issued and outstanding, and under the supplement to the prior lien mortgage providing that said bonds should be, when the notes were refunded, delivered to the trustee as additional security, said bonds were not refunded within the meaning of the sinking fund provision authorizing the subtraction of their amount from the total amount of prior lien bonds issued and outstanding, and therefore, the corporation is not relieved from paying one per cent on $3,000,000 of bonds under the prior lien mortgage.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 546 of the Civil Practice Act.

*Cravath, Henderson & De Gersdorff* [*Douglas M. Moffat* of counsel; *Edward S. Pinney* with him on the brief], for the plaintiff.

*Hornblower, Miller & Garrison* [*Edward C. Bailly* of counsel; *Frederic G. Bastian* with him on the brief], for the defendant.

DOWLING, J.   The controversy here submitted to the court is as to the amount of the sinking fund installment required to be paid by plaintiff to defendant on April 1, 1924, pursuant to the provisions of the prior lien and refunding mortgage hereinafter referred to, being the first installment payable thereunder.   Plaintiff claims that it made an overpayment of $30,000 on said date, being entitled to subtract $3,000,000, the face value of certain of its first mortgage bonds, in computing the amount of said installment.

There is no dispute as to the facts, but solely as to the legal conclusion to be drawn from the various documents recited in the agreed statement of facts and annexed in full thereto.   Stated as briefly as is possible in view of their voluminous nature, they are as follows:

1. On or about April 1, 1916, plaintiff executed and delivered to the Columbia Trust Company, as trustee, its first mortgage dated April 1, 1916, mortgaging its gas and electric plants and other property and securing an authorized issue of $15,000,000 face amount of first and refunding mortgage five per cent forty-year sinking fund gold bonds (hereinafter referred to as the " underlying bonds "), all maturing April 1, 1956.

Article 4 of said first mortgage provides for the establishment of a sinking fund for the purchase or redemption and retirement of the underlying bonds, by the payment to the trustee under said first mortgage, on the 1st day of April in the year 1920 and thereafter on or before the first day of April in each year until all of the underlying bonds shall have been redeemed or paid, of a sum equal to one per cent of the face amount of underlying bonds issued and outstanding (as such term is defined in section 4 of article 4 of said first mortgage) on the day upon which such payment was required to be made.   It is stated in section 1 of said article 4 that it is intended by the operation of said sinking fund to retire all of the underlying bonds at or before the maturity thereof on April 1, 1956.   To that end, said section 1 provides for periodical readjustment of the amount of the sinking fund payments if it shall appear that such sinking fund payments will be insufficient to retire all of the underlying bonds on or before April

**124** CINCINNATI GAS & ELECTRIC CO. *v.* NEW YORK TRUST CO.

First Department, January, 1926. [Vol. 215

1, 1956. All installments of said sinking fund maturing prior to this submission have been paid when and as such installments have become due and payable, and in computing the amount of such sinking fund installments there have been included, as bonds issued and outstanding, the $3,000,000 principal amount of underlying bonds now pledged under the prior lien mortgage.

2. On or about December 1, 1919, plaintiff executed and delivered to the Central Trust Company of Cincinnati, as trustee, a certain trust indenture, dated December 1, 1919, securing an authorized issue of $2,400,000 face amount of six per cent three-year secured gold notes, all maturing December 1, 1922. Under this indenture $3,000,000 face amount of underlying bonds were pledged as security, and the trustee of the indenture securing the notes was granted the power to sell the underlying bonds in case of default in payment of principal of or interest on the notes and to apply the proceeds to the amount due on the notes. The six per cent notes have been refunded by the issue of prior lien bonds and have been all paid and canceled and the $3,000,000 face amount of underlying bonds pledged under the notes have been delivered to the defendant trustee and are now held by it.

3. On or about January 1, 1921, plaintiff executed and delivered to the New York Trust Company, as trustee, its mortgage dated January 1, 1921 (known as the "prior lien and refunding mortgage"), mortgaging its gas and electric plants and other property and securing an authorized issue of $50,000,000 face amount of prior lien and refunding mortgage forty-year sinking fund gold bonds, all maturing January 1, 1961.

The prior lien and refunding mortgage authorized the issuance of bonds in coupon and registered forms, in such series and at such rates of interest as might be determined from time to time by the board of directors of the mortgagor.

Article 4 of said prior lien and refunding mortgage provided for the establishment of a sinking fund for the purchase or redemption and retirement of prior lien bonds.

4. On or about March 1, 1922, plaintiff executed and delivered to the New York Trust Company, as trustee, a first supplement to the prior lien and refunding mortgage. This changed the form of bonds and coupons thereafter to be issued and materially amended article 2 of the prior lien and refunding mortgage, which governs the issuance of bonds under said mortgage.

5. On or about June 1, 1922, plaintiff executed and delivered to the New York Trust Company, as trustee, a further and second supplement to the prior lien and refunding mortgage dated June 1, 1922. This added a new section to article 2 of the prior lien

and refunding mortgage and modified the mortgage in certain other respects not material for the purposes of this controversy.

The six per cent notes, above referred to, were called by the plaintiff for redemption on July 1, 1922, and were duly paid by plaintiff on that date and subsequently canceled. To refund said notes so redeemed there were issued and sold by the plaintiff, as permitted by article 2 of the prior lien mortgage (as amended by the first supplement), $2,552,500 face amount of prior lien bonds, series B, of which $2,400,000 were the bonds reserved under section 3 (b) of said article 2 and $152,500 were bonds reserved under section 4 of said article 2. Upon the said refunding of the six per cent notes by the issue of said $2,552,500 prior lien bonds, the $3,000,000 face amount of underlying bonds pledged to secure said notes were delivered to the defendant trustee, as required by the following provision of section 3 of article 2 of the prior lien and refunding mortgage as amended by the first supplement: " Upon the cancellation of the indenture securing the Six Per Cent Notes, the Underlying Bonds pledged thereunder shall forthwith be delivered to the Trustee hereunder, shall be stamped as set out above, and shall be held by the Trustee without impairment of the lien of such Underlying Bonds, as additional security under this indenture and upon the trusts herein declared; but the Trustee shall not pay any deposited cash or authenticate and deliver any Mortgage Bonds in respect of such Underlying Bonds."

Said $3,000,000 of underlying bonds have since been and are now pledged with and held by the defendant, as trustee under the prior lien and refunding mortgage, as additional security thereunder, as required by the terms of said section 3 of article 2.

On April 1, 1924, the first sinking fund installment under the prior lien and refunding mortgage fell due. Section 1 of article 4 of said mortgage (which provides for the establishment of the sinking fund) provides in part:

" Section 1. The Gas Company covenants and agrees that as a Sinking Fund for the purchase or redemption and retirement of the Mortgage Bonds, it will pay to the Trustee, in gold coin of the United States of America of or equal to the standard of weight and fineness as it existed on January 1, 1921, on or before the first day of April, in the year 1924, and on or before the first day of April in each and every year thereafter, until all of the Mortgage Bonds shall have been redeemed or paid, a cash sum to be determined and paid as follows:

" (a) On April 1, 1924, a sum equal to one per cent (1)% of the face amount of Mortgage Bonds which on said date shall be issued and outstanding;

**126** Cincinnati Gas & Electric Co. *v.* New York Trust Co.

First Department, January, 1926. [Vol. 215

" (b) On April 1, 1925, and on April 1 of each year thereafter a sum equal to the sum so payable on the next preceding April 1 (except as provided in clause c next hereinafter) and, if the face amount of Mortgage Bonds issued and outstanding on such Sinking Fund payment date shall be greater than the face amount of the Mortgage Bonds issued and outstanding on such next preceding April 1, an additional sum which shall be such percentage of such excess face amount of Mortgage Bonds as paid and compounded annually at five per cent (5%) will amount on January 1, 1961, to such excess face amount of Mortgage Bonds, it being the intention by the operation of the Sinking Fund to retire all of the Mortgage Bonds at or before the maturity thereof and it having been determined that 1% paid and compounded annually at 5% upon the face amount of Mortgage Bonds issued and outstanding on April 1, 1924, will on January 1, 1961, the date of maturity of the Mortgage Bonds, be equal to the face amount thereof; * * *.

" Whenever used above, the phrase ' issued and outstanding ' shall be deemed to have the meaning defined in Section 4 of this Article."

Section 4 of article 4 provides in part:

" For the purpose of computing the amount of the Sinking Fund payments under Section 1 of this Article Four, Mortgage Bonds acquired for the Sinking Fund otherwise than pursuant to Section 3 of this Article, as well as unpresented Bonds drawn for purchase for the Sinking Fund other than under said Section 3 of this Article, shall be deemed issued and outstanding; but for said purpose there shall be subtracted from the total Mortgage Bonds issued and outstanding a face amount thereof equal to the face amount of the bonds issued under the First and Refunding Mortgage and refunded under Section 3 of Article Two hereof and then held by the Trustee hereunder."

On April 1, 1924, when the sinking fund installment in question fell due, prior lien bonds of two series were outstanding, to wit, series " A " and series " B " which were by their terms redeemable at the following rates: Series " A " bonds: To and including January 1, 1931, at 110 per cent; thereafter to and including January 1, 1941, at 107½ per cent; thereafter to and including January 1, 1951, at 105 per cent, and thereafter and prior to maturity at 102¼ per cent of the face value thereof and accrued interest. Series " B " bonds: To and including October 1, 1928, at 105 per cent and accrued interest; thereafter to and including October 1, 1936, at 104 per cent and accrued interest; thereafter to and including October 1, 1944, at 103 per cent and accured

interest; thereafter to and including October 1, 1952, at 102 per cent and accrued interest, and thereafter to and including October 1, 1960, at 101 per cent and accrued interest.

Section 3 of article 2 of the prior lien and refunding mortgage (both before and after said first supplement) set aside three separate amounts of prior lien bonds to be used for " refunding or purchasing," respectively, (a) the underlying bonds to the extent of $12,000,000 face value, (b) the six per cent notes to the extent of $2,400,000, and (c) certain seven per cent notes to the extent of $2,000,000 (which have been retired and are not material to this controversy).   By the terms of the prior lien and refunding mortgage as it stood before its amendment by the first supplement, the $3,000,000 underlying bonds pledged to secure the six per cent notes could have been sold by the plaintiff on the retirement of these notes, and by the terms of said mortgage prior to the first supplement an amount of prior lien bonds equal to the total authorized issue of the underlying bonds ($15,000,000) was set apart to refund or purchase the bonds of this issue.   By the terms of the first supplement, however, plaintiff was required to deliver said $3,000,000 underlying bonds pledged to secure the six per cent notes, on retirement of the six per cent notes, to the defendant trustee as further security under the prior lien mortgage, and the original amount of $15,000,000 prior lien bonds reserved under said subsection (a) was reduced to $12,000,000 and the company was forbidden to issue any additional prior lien bonds against its $3,000,000 underlying bonds so deposited with the trustee.   Said section 3 of article 2 then proceeds to provide for the manner in which these designated securities are to be refunded or purchased and to provide for their deposit with the defendant trustee and for the deposit with the trustee of the $3,000,000 underlying bonds when the six per cent notes under which they were pledged should be refunded and canceled.   The original provisions of the prior lien and refunding mortgage in this respect were amended in certain particulars by the first supplement.

Not only did section 3 of article 2 of the prior lien and refunding mortgage, as amended by the first supplement, require the deposit with defendant as trustee of the underlying bonds pledged to secure the six per cent notes, when they were paid, to be held as additional security for said mortgage, but there was inserted in the first supplement the following covenant: " The Gas Company covenants and agrees that it will pledge all First and Refunding Mortgage Bonds hereafter issued forthwith upon their issue and all the First and Refunding Mortgage Bonds pledged to secure the Six Per Cent Notes of the Gas Company hereinabove referred

**128** CINCINNATI GAS & ELECTRIC CO. *v.* NEW YORK TRUST CO.

First Department, January, 1926. [Vol. 215

to upon the maturity of said Notes, with the Trustee hereunder, to be held uncancelled without impairment of the lien of said First and Refunding Mortgage Bonds, and as additional security under the Prior Lien and Refunding Mortgage and upon the trusts therein and herein declared, and against the pledge thereof, except in respect to the said First and Refunding Mortgage Bonds pledged to secure the Six Per Cent Notes, Mortgage Bonds may be issued as provided by Section 3 of Article Two of the Prior Lien and Refunding Mortgage as herein modified."

On April 1, 1924, when the first sinking fund payment fell due under the prior lien mortgage, there had been issued under said mortgage $13,500,000 face amount of prior lien bonds, consisting of $7,500,000 series A bonds and $6,000,000 series B bonds. The plaintiff has paid to defendant trustee the sum of $135,000 or one per cent upon the entire face amount of the $13,500,000 prior lien bonds which had been so issued on April 1, 1924. The plaintiff considered and still considers that in making said payment it made an overpayment of $30,000 to the defendant trustee, and that the correct sinking fund payment called for by the prior lien and refunding mortgage and which should have been paid was only $105,000 (*i. e.*, one per cent of $10,500,000 prior lien bonds) on the ground that the $3,000,000 underlying bonds formerly pledged to secure the six per cent notes had been " refunded under section 3 of article 2 " of the prior lien and refunding mortgage by their deposit, pursuant to the requirements of said section 3 of article 2 of said mortgage, with the defendant trustee upon the refunding and payment of said six per cent notes, and that, therefore, an amount of prior lien bonds equal to their face amount ($3,000,000) should have been subtracted from the total amount of outstanding prior lien bonds on which the sinking fund payment of one per cent is computed, under the terms of said section 4 of article 4, which requires such subtraction in case underlying bonds have been " refunded under section 3 of article 2 " of the prior lien and refunding mortgage.

The defendant trustee, on the other hand, considered and still considers that the $3,000,000 in question was not to be subtracted from the total amount of outstanding prior lien bonds on which the sinking fund of one per cent is computed, on the ground that the said $3,000,000 underlying bonds had not been " refunded under section 3 of article 2 " of the prior lien and refunding mortgage within the meaning of the language of section 4 of article 4, and that consequently the sinking fund installment of $135,000 actually paid was correct.

It seems to me that under any reasonable construction of the

various instruments hereinbefore referred to, the contention of the defendant herein must be upheld.

It is admitted that while the $3,000,000 underlying bonds were held by the trustee under the pledge to secure the three-year six per cent notes, they were " issued and outstanding " and constituted an obligation of the plaintiff. The plaintiff argues that when the six per cent notes were refunded the security also was refunded. Ordinarily, when a debt is wiped out the security is returned to the pledgor to do with it as he will. Under the original terms of the prior lien and refunding mortgage (article 2, § 3), " Whenever all the Underlying Bonds or Six Per Cent Notes or Seven Per Cent shall have been paid or purchased and deposited with the Trustee, the Trustee shall cancel all the Underlying Bonds or Six Per Cent Notes, or Seven Per Cent, as the case may be, and surrender the same to the trustee under the mortgage or indenture securing the same, and the Gas Company shall cause the mortgage or indenture securing the same to be canceled and discharged of record and the property embraced therein to be released from the lien of such mortgage or indenture. *Upon such cancellation of the indenture securing the Six Per Cent Notes, the Underlying Bonds pledged thereunder shall thereupon become available to the Gas Company for issue or refunding hereunder or other disposition as it shall determine.*" Thus under the original mortgage the $3,000,000 of underlying bonds would have been refundable. Although the subject of a pledge, they were enforcible obligations of plaintiff. (*Bankers Trust Co. v. Denver Tramway Co.,* 233 N. Y. 604.) Under that mortgage, after they had been released from the pledge upon payment of the notes, the plaintiff could either have canceled them, or put them in its treasury, or sold them outright. It is clear that these $3,000,000 of underlying bonds were originally included in the obligations to be refunded from the entire issue of $15,000,000 of prior lien bonds.

But the first supplement to the original mortgage changed this situation completely. By it, the amount of the prior lien bonds to be issued to refund underlying bonds was reduced from $15,000,000 to $12,000,000 (article 2, § 3-a), and the clause above quoted was changed to read as also quoted in full hereinbefore. By that change, instead of the $3,000,000 of underlying bonds released upon payment of the six per cent notes being delivered to plaintiff *for whatever disposition it might determine* to make of them, they were to be held by the trustee without impairment of their lien *as additional security under the indenture and upon the trusts therein declared.*

9

I am of the opinion that upon the conceded facts in this case the $3,000,000 of underlying bonds were not legally refunded, either by operation of law or by reason of the agreement of the parties; and that the intent plainly expressed to have them used as additional security for the plaintiff's bondholders should be sustained, since in construing the terms of a trust mortgage it has been held that " That construction must be adopted which is most favorable to the bondholders, and one which will not impair their security in any way." (*Lisman* v. *Michigan Peninsular Car Co.*, 50 App. Div. 311, 315; quoted with approval in *Harnickell* v. *Omaha Water Co.*, 146 id. 693, 701; affd., on opinion of CLARKE, J., 208 N. Y. 520.)

Judgment should, therefore, be awarded in favor of defendant, without costs.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment directed in favor of defendant, without costs. Settle order on notice.