FRANK SILVER, Appellant, *v.* PARK-LEX HOLDING CORPORATION and Others, Respondents.

First Department, December 2, 1927.

Corporations — mortgages — action to foreclose corporate mortgage given to secure corporate bonds — mortgage provided that to secure prompt payment of bonds, mortgagor would pay certain portion of principal and interest each month to named company whose president was trustee under mortgage — said company was adjudged bankrupt after certain payments had been made, and thereafter, default having been made in payment of principal and interest, this action was commenced — payment by mortgagor to said bankrupt company did not constitute payment of principal and interest to bondholders — said money was so paid as further security — plaintiff has shown default.

This is an action by a bondholder to foreclose a corporate mortgage. The question presented is whether or not the holder has made default in the payment of principal and interest. It appears that the mortgage provided that in order to secure the prompt payment of the bonds and interest, a certain portion thereof should be paid by the mortgagor each month to a company whose president was trustee under the mortgage. Payments were so made, but subsequently said company was adjudged a bankrupt and when plaintiff's bonds were presented thereafter for payment, payment was refused. The payment, under said provisions in the mortgage, to said company did not discharge the obligation of the mortgagor *pro tanto*, but the money so paid was paid as further security. Additional security does not discharge the primary obligation, which, under the terms of the mortgage, rested upon the corporation even after payments were made as provided in the mortgage. Accordingly,

the mortgagor was in default, although it had complied with the provision requiring it to pay portions of the principal and interest to the bankrupt company.

APPEAL by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 6th day of July, 1927.

*Henry C. Burnstine* of counsel [*Bernard Wiess* with him on the brief; *Burnstine & Geist,* attorneys], for the appellant.

*Isidore Siegeltuch* of counsel [*Siegeltuch, Butler & Kraft,* attorneys], for the respondent Park-Lex Holding Corporation.

*Joseph A. Seidman,* for the respondent Joseph Corn.

*Cloyd Laporte* of counsel [*Maxwell Steinhardt* and *Haughton Bell* with him on the brief; *Root, Clark, Buckner, Howland & Ballantine,* attorneys], as *amici curiæ,* on behalf of the committee for the protection of the holders of bonds sold through G. L. Miller & Company, Inc.

O'MALLEY, J.   The action is to foreclose under a deed of trust (hereinafter referred to as a mortgage) executed and delivered by the defendant Park-Lex Holding Corporation to the defendant Garfield L. Miller, as trustee, to secure a certain bond issue.   Some of the bonds which matured January 1, 1927, were owned and held by the plaintiff.

The defendant Park-Lex Holding Corporation (hereinafter designated Park-Lex) was the owner of unimproved real property, subject to mortgages held by other defendants, particularly the defendant Corn.   These mortgages were subordinated to the trust mortgage and at the time of the commencement of the action were vested in such defendant by mesne assignments.

Desiring to improve its property, the defendant Park-Lex entered into an agreement with G. L. Miller & Company, Inc. (hereinafter designated as Miller & Co.) for financing.   Pursuant to such agreement, Park-Lex executed definitive bonds of smaller denominations than the temporary bond, but equal in amount, in the sum of $460,000.   Most of these definitive bonds were sold to the public by Miller & Co.   They were secured by the trust mortgage executed and delivered at the time of the execution of the temporary and original bond.   It was under this that the defendant Miller, president of Miller & Co., was trustee.

The bonds owned by the plaintiff were by their terms due and payable January 1, 1927.   All of the bonds bore interest commencing January 1, 1925, at the rate of six and one-half per cent payable semi-annually on January first and July first of each year.   By their terms the defendant Park-Lex promised to pay the bearer

the principal and interest " at the office of G. L. Miller & Company, Inc. * * * or at the office of the Fulton National Bank of Atlanta * * * or at the office of the Guaranty Trust Company of New York * * *." The coupons attached called for payment in like manner.

All such bonds were secured by the mortgage and specifically referred thereto. The form of the bonds and coupons was contained in the mortgage, the first covenant of which was to the effect that the mortgagor would pay the indebtedness as " in said bonds provided." Another clause recited that " For the further carrying into effect this instrument and for the purpose of fully and completely securing the holders of said bonds and coupons," subsequent covenants, provisions and conditions were made part of the mortgage. Among these is one which is determinative of this appeal. In so far as material it provides:

" *Thirty-fourth.* To secure the prompt payment of the bonds maturing in each of the years 1927 to 1937, both inclusive, the Company agrees to pay to G. L. Miller & Company, Inc., one-twelfth of the aggregate amount payable in each of said years above mentioned, monthly in advance in cash, beginning with the first day of January, 1926, in the year previous to the maturity of the bonds so to be retired, to be applied in the retirement of the bonds maturing that year; except that as to said payments to be made on January 1, 1936, and monthly thereafter to and including December 1, 1936, said payments shall be one-twelfth of the sum of $28,500; and in order to accumulate a fund sufficient to insure the prompt semi-annual payments of interest on all of said bonds as they respectively mature, the Company agrees to pay G. L. Miller & Company, Inc., one-twelfth of the amount of the interest which shall accumulate in each year on all bonds at the time outstanding, monthly in advance in cash, beginning with the first day of January, 1926, to be applied semi-annually in the payment of the interest coupons above mentioned."

Between January 18, 1926, and August 24, 1926, proper deposits were made with Miller & Co. under this provision, and the plaintiff received payment on account of his interest on bonds from Miller & Co. on July 1, 1925, and January 1 and July 1, 1926. In August, 1926, Miller & Co. went into an equity receivership. Subsequently certain other payments on account of principal were made to the receiver, and later after the appointment of a trustee in bankruptcy, further payments were made to the National Bank of Commerce to be held in escrow pursuant to an arrangement with the said trustee. The plaintiff was among the creditors who filed claims with the trustee.

Plaintiff's bonds were duly presented for payment on January 3, 1927, at the office of Miller & Co., but were not paid. It is contended by plaintiff that there has been a default in the payment of principal and interest as of the date last mentioned, and that he was, therefore, entitled to foreclose. On the other hand, the defendants assert that payments made to Miller & Co., as aforesaid, constitute payment by the mortgagor of the principal and interest to all bondholders.

If, as plaintiff contends, there has been a default, he is entitled to foreclose, as all other elements necessary to such right are present. But if the payments referred to were payments to the bondholders, there was no default and the plaintiff is not entitled to succeed in this action.

Upon a prior appeal (*Silver* v. *Park-Lex Holding Corp.*, 220 App. Div. 717) this court sustained the appointment of a receiver herein. The question here presented was then argued. The effect of our decision was to hold that there had been a default, and we considered such issue thereby to have been settled. No additional facts are herewith presented sufficient to cause us to alter the view then entertained.

In our opinion the payments to Miller & Co. did not discharge the obligations *pro tanto* of the mortgagor. They were merely additional security to the bondholders and *cestuis* under the trust agreement. Whether Miller & Co. under all the circumstances of the case, was a trustee for the bondholders to receive additional security, is immaterial, since they were not trustees or agents to receive payment. Additional security would not discharge the primary obligation, which, under the terms of the bonds, was to pay the principal and interest to the bearers of the bonds at specified times and places. It was not to pay the bond and coupon holders out of a specific fund merely. It was general in its nature.

Moreover, resort to the security for a debt does not discharge the primary obligation. (*Wadsworth* v. *Lyon*, 93 N. Y. 201; *Schenectady Savings Bank* v. *Ashton*, 205 App. Div. 781.) More particularly is this so when the security furnished is given, not to the trustee under the mortgage, but to a third party. Nor did the fact that the plaintiff sought to establish his claim in bankruptcy against the estate of Miller & Co. amount to an acceptance of Miller & Co. as his sole debtor or an election to look only to the funds in its hands for the satisfaction of his claim. Such act was consistent with his rights to look also to the principal debtor, and his remedies were consistent and concurrent. (*Sciaballa* v. *Illinois Surety Company*, 166 App. Div. 677; affd., 215 N. Y. 692.)

The bonds and the mortgage, when read as a whole, do not permit of the construction contended for by the defendants. Nothing in their context indicates that the bond or coupon holders were looking to the fund in the hands of Miller & Co. except as security. On the contrary, everything indicates that they were looking to the mortgagor primarily for payment at the respective dates and places. If it were the intention to release the mortgagor to the extent of these anticipatory deposits with Miller & Co., it would have been simple so to provide. The fact that such provision was made in the covenant immediately following the one under consideration with respect to bonds called for redemption, tends to confirm the conclusion that the mere making of deposits with Miller & Co. was not intended to discharge the mortgagor *pro tanto*. The 35th paragraph referred to provided that when bonds were to be redeemed, the mortgagor was to pay to the trustee a sum sufficient to pay the principal of the bonds together with interest to the next ensuing interest payment date. In the event that any bonds called for redemption were not surrendered, the trustee was to retain the fund, and it was stipulated that " such deposit shall be *in full payment* of such bonds and coupons belonging thereto and thereupon and thereafter said bonds and coupons belonging thereto shall be precluded from participating in the lien and security offered by these presents and the holder or holders shall look for the payment of the said bonds and interest accrued to the time fixed for their retirement only to the sum so deposited in the hands of the said trustee." (Italics ours.)

In reaching this conclusion a strained interpretation of the language of the bonds and mortgage is not necessary. Nor are we required, as we might, to resolve any ambiguity in favor of the bondholders. (*Lisman* v. *Michigan Peninsular Car Co.*, 50 App. Div. 311, 315 [1st Dept. 1900]; *Harnickell* v. *Omaha Water Co.*, 146 id. 693, 701 [1st Dept. 1911]; affd., on opinion below, 208 N. Y. 520 [1913]; *Cincinnati Gas & Electric Co.* v. *New York Trust Co.*, 215 App. Div. 122, 130 [1st Dept. 1926].)

Payment to Miller & Co. not being payment to the bond and coupon holders, and plaintiff's bonds and interest coupons not having been paid when presented on the date in question, the mortgagor was clearly in default and the plaintiff was entitled under all the provisions of the bonds and mortgage to maintain this foreclosure. In view, however, of the situation which may be created under the provisions of paragraph 24 of the deed of trust, by circumstances not in the record before us, we deem it advisable, instead of directing judgment as prayed for in the complaint, to order a new trial.

It follows, therefore, that the judgment appealed from should be reversed, with costs of this appeal to the appellant, and a new trial ordered.

DOWLING, P. J., MERRELL and PROSKAUER, JJ., concur.

Judgment reversed, with costs of this appeal to the appellant, and a new trial ordered.