**ANDREWS v. MISSOURI STATE LIFE INS. CO.**

No. 6754.

Circuit Court of Appeals, Fifth Circuit.

Oct. 29, 1932.

John T. Dennis, Bertram S. Boley and Julian F. Joselove, all of Atlanta, Ga., for appellant.

Max F. Goldstein, of Atlanta, Ga., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

Missouri State Life Insurance Company sued Mrs. Leontine C. Andrews at law and got judgment for $6,000 on defaulted interest coupons due November 1, 1930, from bonds signed by her. The coupons were payable at Chemical National Bank in New York. She pleaded payment, in that the Bank of Tennessee, at Nashville, Tenn., the surviving trustee under the bond mortgage which was exhibited, had pursuant to its terms collected from the mortgaged property sufficient money to pay all the coupons then maturing, and had it on hand until November 5, 1930, when the bank failed. The case is rested on the contention that the bank held the money as the agent and trustee of the bondholders, and that its possession of it on November 1 operated as payment of the coupons, and that any loss arising from the subsequent failure of the bank falls upon their owners. The striking on demurrer of this the sole defense is the error assigned.

The exhibited trust mortgage is lengthy. It discloses that Mrs. Andrews owned a fifty-year leasehold upon valuable properties of the state of Georgia, in Atlanta, and that these properties had been subleased by her to others for monthly rentals sufficient to pay the annual rentals due to the state, to pay the semiannual interest coupons on the bonds which she was issuing and securing, and to leave a surplus income for her. To secure the bonds and coupons the instrument conveyed the leasehold and her rights as lessor in the subleases to the Bank of Tennessee and an individual, since deceased, as trustees, with the power and duty to collect the monthly rents from the subleases, to discharge the claims of the state, to retain each month one-twelfth of a sum sufficient to pay the coupons and bonds maturing that year, and to pay the remainder over to her. There was also a provision whereby on published notice she might retire any or all of the bonds before maturity at a premium by depositing money with the corporate trustee for that purpose. On payment of all the bonds and coupons in due course, or on deposit of money therefor with the trustees, the trust mortgage was to cease and be canceled. With this general view of the bond scheme premised, we are prepared to consider and apply the particular provisions here relied on.

There is no question of innocent holder for value. The holder of the coupons sued on is alleged to be the original lender on the bonds. Moreover, the coupons refer to the bonds and the bonds refer to the trust mortgage, so that notice would be imputed to any holder of all the provisions of each. McClure v. Oxford, 94 U. S. 429, 24 L. Ed. 129. These instruments were executed at the same time as parts of the same transaction, and the problem is to construe them together to arrive at the true meaning of all.

Clearly it was not the intent of the contracting parties that the mortgaged property alone was to be looked to for payment. Each bond and each coupon is the absolute promise of Mrs. Andrews to pay a fixed sum of money at a fixed date at the Chemical National Bank of New York in gold coin of a stated weight and fineness. Each bond recites that it is *secured* by the trust mortgage, and contains her waiver of *all* homestead and exemption rights, not of such rights in the mortgaged property alone. The mortgage states that the mortgaged property is thereby conveyed "in order to *secure* the due and punctual payment of the interest and principal of said bonds and the punctual performance of all covenants and agreements *on the part of said Leontine C. Andrews.*" (All italics and parentheses in quotations from the mortgage are supplied.) Among the particular covenants of the mortgage is one that: "*She* will pay or cause to be paid duly and punctually to the holder of every bond issued and secured thereby the principal and interest accrued thereon at the dates and places and in the manner mentioned in such bonds, and in the coupons thereto belonging, and in this indenture according to the true tenor thereof." Outside of the security of the mortgage there is thus a plain general and personal obligation of Mrs. Andrews to pay these coupons at maturity in gold at the Chemical National Bank.

The condition of the mortgage is: "Provided, however, and these presents are on the express condition that if Leontine C. Andrews * * * shall well and truly pay or cause to be paid to the holders of bonds to be issued hereunder when the same shall become due and payable *the whole amount* of principal and interest due upon *all* the bonds and coupons hereby secured and then outstanding * * * or shall provide for such payment by *depositing with the Trustees* hereunder for the payment of such bonds and coupons *the entire amount* to be paid thereon, principal and interest * * * then the said Trustees shall reconvey the property herein described to said Leontine C. Andrews, etc." The deposit with the trustees in lieu of payment here referred to does not apply to the recurring maturities of semiannual coupons, but to a final deposit to pay all outstanding bonds and coupons which terminates the business and abrogates the mortgage. This is further illustrated in article II of the mortgage, wherein redemption of bonds before maturity is provided for on published notice. The provision there is: "If such notice shall have been so given, published and mailed, and such deposit made (with the corporate Trustee), the bond or bonds so called for redemption shall be considered redeemed and shall *be payable upon such redemption date at the office of the corporate Trustee* and no further interest shall accrue upon any such notes called for redemption, and any coupons for interest maturing after such date shall be wholly null and void, and such notes and coupons *shall cease to be obligations* of the party of the first part, or be entitled to any further right or benefit hereunder, and the owner or holders thereof *shall look for payment solely and only to said deposit* in the hands of the corporate Trustee, anything in such notes or coupons or herein to the contrary notwithstanding." These provisions mean that bonds duly called before maturity become payable at the Bank of Tennessee instead of at the Chemical National Bank, and upon the call date instead of their date of maturity, and that thereafter the deposit with the Tennessee bank is payment and belongs to the bondholders; Mrs. Andrews being discharged. If all outstanding unmatured bonds are thus called, the mortgage is to be canceled. But coupons maturing in due course remain payable at the Chemical National Bank and are not within this provision, which makes deposit with the corporate trustee equivalent to payment.

More confident reliance is placed by Mrs. Andrews upon the following two covenants: "That she will deposit with the Trustees at the Bank of Tennessee at Nashville, Tenn., at least thirty days prior to the date when the semi-annual interest payments are due, a sum equal to the semi-annual interest to be paid on the next semi-annual interest date, (with a like provision for any matured principal) and time is of the essence of this covenant"; and "The said party of the first part further covenants and agrees that any and all rents or other payments due or to be paid under the terms of said subleases * * * shall be collected by the Trustees hereunder and does hereby appoint said Trustees *as trustee for her,* to receive and collect all payments due on said subleases. * * * The said Trustees upon the collection of said sums of money shall apply them first to the payment of the annual rental that may be due the State of Georgia * * * and for the purpose of payment of any charges necessary to maintain the priority of this indenture. * * * After said payments are made the Trustee shall *retain* one-twelfth of the annual sum due in each of the respective years in which this indenture shall be of force prior to May 1st, 1943, and $20,000.00 of the bonds maturing May 1st, 1943, *for the purpose of meeting payment* on principal and interest of the bonds secured hereby that may be due during the course of the respective years. * * * After the trustees have made the payments necessary to maintain said lease from the State of Georgia, and to maintain the priority of this indenture, and *have retained* one-twelfth of the annual payments due hereunder, then the balance of the said sums collected by said Trustees, if any, shall *be paid* to the party of the first part, her heirs, etc." A sum sufficient to pay the coupons maturing November 1, 1930, had been retained by the trustee under the last-quoted provision. It is contended, and we are disposed to agree, that the sum may also be considered to be a deposit with the trustee for that purpose under the covenant quoted immediately before. But we find nothing in the language of either covenant to make the money thus in the hands of the trustee at the maturity of the coupons to be ipso facto payment. The absence of such language is in strong contrast with the explicit provisions to that effect when deposit is made to pay called bonds. It is true that the fund now involved, like the subleases from which it arose, is a security for the payment of the coupons about to mature. It could not be used or controlled by Mrs. Andrews unless to have it sent to New York to pay them.

Had she become insolvent, her creditors or trustee in bankruptcy could not have recovered it. Steel Cities Chemical Company v. Virginia-Carolina Chemical Co. (C. C. A.) 7 F.(2d) 280; Rogers Locomotive Works v. Kelley, 88 N. Y. 234. The first of the two covenants now under discussion does not state even the purpose of the deposit save by a vague implication. The second quoted covenant, however, clearly states that the fund is "for the purpose of meeting payments," but does not say how the payments are to be made. The trustees are to *pay* the state of Georgia, but they are only to *retain*, that is, to hold back, the money in question. The coupons are still payable in New York, and Mrs. Andrews is personally bound to pay them there. Probably it was intended, as it is alleged the actual practice was, that the trustee should forward the funds to the Chemical National Bank to be there used in payment. At least on the request of Mrs. Andrews this should have been done. If the fund is to be sent to New York, there is no payment by means of it until the coupons are presented and the money delivered over by the Chemical National Bank. If the fund, in the absence of instructions from Mrs. Andrews, is to be held in Nashville until she pays or fails to pay in New York, it remains a mere security until applied. Silver v. Park-Lex Holding Corporation, 222 App. Div. 40, 225 N. Y. S. 394, affirmed 248 N. Y. 537, 162 N. E. 515. Such a security in the hands of the trustee is to be applied by it only after a default, and then quite differently from the method of payment in New York. There the coupons are paid in full as presented; first come, first served. The trustee under other provisions of the mortgage must pay out all funds in its hands, whether arising from foreclosure or otherwise, ratably and without preference. The agreement of Mrs. Andrews touching the collection of the rents is explicit that the trustees are appointed in that connection as "trustees for her." In retaining the money and sending it to New York for disbursement, they would certainly act for her. In holding it at Nashville as security against default, the money would stand in the nature of a pledge for the benefit of third persons. The mortgage gives the trustee power to take action in behalf of the bondholders against the security only in case of carefully defined defaults, and that in reference to nonpayment of interest is made to mature only after thirty days. So that up to the time of the trustee's failure on November 5, it had no matured right to seize for the bondholders and pay out to them the money in its hands as security. We express no opinion as to whether Mrs. Andrews or the coupon holders or both may now pursue the fund so held by the trustee. It suffices to hold that the coupons have not under the facts alleged been paid, and Mrs. Andrews is still under personal obligation to pay them.

Judgment affirmed.