[No. 24326. Department One. September 11, 1933.]

BENJAMIN FRANKLIN HOLDING COMPANY, *Respondent,* v. CHARLES F. CLISE, *as Trustee, Appellant.*[1]

*Roberts, Skeel & Holman* and *Wm. Paul Uhlmann,* for appellant.

*Allen, Froude, Hilen & Askren,* for respondent.

MITCHELL, J.—In June, 1928, Gardner J. Gwinn and his wife were the owners of a ninety-nine year lease-hold interest in a certain lot in Seattle. They, as mort-gagors, executed and delivered a trust deed to William D. Comer, as trustee, by which they mortgaged all of their right, title and interest as lessees in and to the

[1]Reported in 24 P. (2d) 1065.

property on which the Benjamin Franklin Hotel was constructed, and also all of their right and interest in and to all improvements to be erected on the lot and all of the personal property used in connection therewith, more particularly described in the trust deed. The mortgage was given to secure the payment of a bond issue in the sum of $550,000 and interest. By the terms of the mortgage, W. D. Comer & Co., a corporation, was designated as depository, to whom the mortgagors agreed to regularly pay sinking fund installments in anticipation of maturing interest and payments of principal to bondholders, and accruing charges against the property, including general taxes and assessments.

After the trust deed was delivered, Gwinn and wife conveyed all of their interest in the leasehold to Benjamin Franklin Holding Company, a corporation, of Seattle, of which Gwinn is an officer. This corporation is now the owner and holder of the lease, and has succeeded to the rights of the mortgagors under the deed of trust, and at the same time become obligated to perform all the covenants and obligations imposed upon the mortgagors by its terms.

The Benjamin Franklin Holding Company made payments to the depository, W. D. Comer & Co., as provided in the mortgage, for interest, principal, taxes and other charges, until the early part of the year 1931, at which time the depository became insolvent. In May of that year, W. D. Comer resigned as trustee, and thereafter Charles F. Clise was elected trustee by a majority of the bondholders, as provided by the terms of the trust deed. He accepted the trust, and since that time has acted as such trustee. In accordance with the terms of the trust deed, he immediately designated the First National Bank of Seattle as de-

pository of the trust funds to replace W. D. Comer & Co., insolvent.

It appears that the plan of undertaking and financing the enterprise involved in this controversy originated with W. D. Comer, representing W. D. Comer & Co., of Seattle, of which he was president and principal stockholder. It was agreed that, with a mortgage on the property to secure the bond issue, W. D. Comer & Co. would purchase the bonds and advance the money for the building, upon architects' certificates. The trust deed or mortgage was prepared by W. D. Comer without any assistance whatever from Gwinn. W. D. Comer, the trustee, and W. D. Comer & Co., the depository, occupied the same office. W. D. Comer & Co. did purchase all of the bonds at par, less $55,000, ten per cent commission for financing the job, according to the understanding of the parties at the time of the execution of the trust deed; and it appears that the bonds, or many of them, were resold to the general public, as was contemplated at all times by W. D. Comer & Co.

A receiver was appointed for W. D. Comer & Co., but prior to the insolvency of that corporation and prior to the designation of the new depository, the Benjamin Franklin Holding Company had paid to W. D. Comer & Co., as agreed by the terms of the trust deed, $21,485.64 into the trust fund to be used for paying general taxes against the property for 1930, for which amount W. D. Comer & Co. failed to account, and this action was brought by the Benjamin Franklin Holding Company to determine upon whom the liability for this loss should fall.

The trial court held that the depository, W. D. Comer & Co., received the tax money as agent for the bondholders, who must sustain the loss. The appeal is from that judgment.

It is necessary to consider those portions of the trust deed that throw light on, and are applicable to, this controversy and the reasons for adopting them, together with the circumstances under which the trust deed was given. It is manifest altogether that the enterprise was planned by W. D. Comer & Co., acting through its president, for the purpose of profit to it in the sum of $55,000.

Article XIII, section 12 of the mortgage, says:

"All of the terms, covenants and conditions of this indenture in favor of or relating to W. D. Comer & Co., a corporation, are made and inserted herein for and in consideration of the agreement of said W. D. Comer & Co. to purchase for investment and re-sale all of the bonds secured by this indenture."

Nor are the facts and circumstances entitled to any different consideration because of the purpose, carried into effect, of resale of the bonds to the public generally than they would be in a similar controversy with W. D. Comer & Co. had the trust deed provided that the bonds should be purchased and held by that corporation, because it appears upon the faces of the bonds (a form of which is set out in the trust deed) that:

"The payment of all of said bonds, together with interest thereon, is equally and ratably and without priority or preference of any bond over any other by any reason whatsoever, secured by an Indenture in the nature of a trust deed, bearing even date herewith, duly executed, acknowledged and delivered by the Mortgagors (and filed and recorded in the office of the County Auditor of King county, Washington), to William D. Comer of Seattle, Washington, as Trustee.

"For a description of the mortgaged property and the nature and extent of the security, reference is made to said Indenture, to all provisions of which this bond and each coupon hereto attached are subject, with

the same effect as if the same were herein fully set forth.''

Two other covenants contained in the mortgage are important; one of them rather common in such agreements, by which, in general terms, the mortgagors agree to keep the premises free from mechanics' liens and to pay all taxes and assessments against the property, the same being Article III, section 2 of the trust deed, as follows:

''The Mortgagors further covenant that they will not at any time suffer any mechanics' liens to be established against said premises or any part thereof; . . . and will promptly and faithfully keep and perform all of the terms, covenants, conditions and agreements contained in said lease, as modified as aforesaid, on their part to be kept and performed; that they will from time to time as and when the same shall become due, pay any and all taxes and assessments, extraordinary as well as ordinary, water rents, municipal, governmental and other rates, charges and impositions which shall at any time be or have been assessed, levied or imposed upon the Mortgagors or upon said premises or any part thereof, and will make such payments respectively from time to time within thirty days after the same shall become respectively due and payable or become a lien on the premises and in due time to prevent any delinquency thereof or forfeiture or sale thereof and will produce to the Trustee receipts therefor or other satisfactory evidence of each of such payments within ten days thereafter.''

Further, upon the same subject and more specifically, Article V, section 2, provides:

''In addition to the deposits provided for in Section 1 of Article II of this Indenture, the Mortgagors further covenant and agree that they will on June 1, 1928, deposit with said W. D. Comer & Co. an amount equal to one-twelfth (1/12) of the estimated annual charge for taxes, assessments, insurance premiums, and other expenses and charges to be paid by the Mortgagors under any of the terms of this Indenture; and

thereafter until the full payment of all of the indebtedness secured by this Indenture, the Mortgagors will deposit with said depositary on the first day of each of the months of each year an amount equal to one-twelfth (1/12) of the estimated annual charge for taxes, assessments, insurance premiums, and all other expenses and charges to be paid by the Mortgagors under this Indenture. Out of the proceeds of said monthly deposits so to be made with it by the Mortgagors as aforesaid, said W. D. Comer & Co. will, so far as said deposits shall be sufficient, pay when due all taxes, assessments, insurance premiums, and other expenses and charges to be paid by the Mortgagors under this Indenture, but said W. D. Comer & Co. shall not be required to advance any of its own money for any of said purposes, and shall not be required to pay any interest on any of said deposits, and the Mortgagors covenant to pay any deficiency to said W. D. Comer & Co. on demand, whenever the same shall be required to meet any of said payments or obligations when due. An annual accounting shall be had between the Mortgagors and said W. D. Comer & Co., on the demand of either of them, on or about June 1st in each year, of all deposits made by the Mortgagors under any of the terms of this Indenture during the preceding year, and of the disposition made by said W. D. Comer & Co. of said deposits.''

█ It satisfactorily appears, we think, that the intention was to change the ordinary rule by which one owing taxes and assessments on property pays them on or before stated times, suggested by statute or ordinance, to the public authorities, and to substitute therefor, for the benefit of the mortgage creditors, the plan of monthly payments in advance sufficient to meet all such public charges and liens—a plan reasonably designed or calculated to increase the marketability, security and value of the outstanding obligations.

How, then, shall it be held that the one to whom such payments are made is the agent of him who makes

the payment? Shall the one making the payment be considered as a principal and have the right to withdraw from the one to whom the payment is made, upon the claim that the latter is the agent of the first, any part of the money intended by the terms of the contract and the act of the parties to be for the benefit of him to whom the payment is made? We think not. These bonds were purchased by W. D. Comer & Co. While owning them, could it be made to pay back any of this accumulated tax money in its possession upon the theory that it had received it as agent for the mortgagors? Surely not. Nor is the rule different when the bonds have been resold, because such purchasers take with notice that the depository, W. D. Comer & Co., to whom the tax money was paid, was, and was intended to be, the original purchaser of the bonds. We think it must be held that to put these advance tax money payments beyond the control of the mortgagors, which, in our opinion, was accomplished in this case, was, of course, a consideration, protection and benefit to W. D. Comer & Co., the original purchaser of the bonds, and through it to the subsequent holders of the bonds.

The contract further provides generally that the mortgagors will, on the first of each month, deposit with W. D. Comer & Co., or other depository, for the account of the bondholders, an amount equal to one-twelfth of the total amount of interest charges, from year to year, and also one-twelfth of the principal due each year; and, because it is further provided that such deposits, to the amount thereof, shall discharge the mortgagors as against the rights and claims of the bondholders, and because the provision relating to monthly payments for taxes does not provide to the same effect, it is argued on behalf of appellant that it was not intended to relieve the mortgagors from li-

ability for tax money paid in the manner provided in the instrument. Not so, however. The provision for the payments of principal and interest at a given place and to a specific person was intended for the safety of the debtor, as binding upon the holders of the bonds, whoever they may be, while the advance payment of tax money into the hands of the depository, who was the intended and designated purchaser of the bonds, was meant for the safety and benefit of the bondholders, having in it no element of agency for the mortgagors.

Appellant refers to some other provisions of the mortgage, of minor importance, in support of his contention, but without setting them out or giving the arguments made thereon, we think it sufficient to say that, upon examination and consideration of the same, they are, in our opinion, not at all inconsistent with the holding of the trial court that W. D. Comer & Co., as depository, in receiving the tax money, acted for itself as purchaser of the bonds and with binding effect to that same extent upon subsequent purchasers of the bonds.

Appellant relies rather confidently upon the reasoning in the case of *Silver v. Park-Lex Holding Corporation*, 222 App. Div. 40, 225 N. Y. Supp. 394, involving a trust deed and an issue of bonds. But in that case, it was specifically and properly held that, by the terms of the trust deed, monthly payments by the mortgagors to G. L. Miller & Co., Inc., to be applied on interest and principal of the bonds, over which payments the controversy arose, was *an additional security* for the payment of the outstanding bonds and interest. The principle or holding in that case is not pertinent in this one, for the reason that the payments in controversy here were in no sense intended as security for

the payment of the primary obligations secured by the mortgage.

A fair consideration and construction of the whole trust deed, in the light of the surrounding circumstances and the relations of the several parties, as shown by a clear preponderance of the evidence, sustains the judgment.

Affirmed.

BEALS, C. J., HOLCOMB, MILLARD, and STEINERT, JJ., concur.